# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5476 | **DATE** | January 7, 2003 |
| **CASE TITLE** | | *Cloutier v. Mote* | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

| Petition for Writ of Habeas Corpus |
|---|

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Robert Cloutier's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [12-1] is denied and this case is dismissed with prejudice. This is a final judgment and the clerk of the court is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

(11) ■ [For further detail see order attached to original minute order]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 0 8 2003 | 41 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 03 JAN -8 AM 8:03 | date mailed notice | |
| RTS | courtroom deputy's initials | FILED-ED 10 Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



UNITED STATES OF AMERICA )
ex rel. ROBERT CLOUTIER, )
)
Petitioner, )
)                    The Hon. Blanche M. Manning
v. )
)                    Case No.  00 C 5476
)
STEVEN D. MOTE,[1] Warden, )
Pontiac Correctional Center, )
)
Respondent. )
_____)

## MEMORANDUM OPINION AND ORDER

Following a jury trial in the Circuit Court of Cook County, habeas petitioner Robert

Cloutier was convicted of first degree murder and aggravated criminal sexual assault and was

sentenced to death. The Illinois Supreme Court affirmed Cloutier's convictions, but vacated his

death sentence. In accordance with the sentencing jury's determination on remand, the trial court

once again sentenced Cloutier to death. The Illinois Supreme Court affirmed the death sentence

imposed on remand. Cloutier then filed a state post conviction petition. The Circuit Court

granted the State's motion to dismiss Cloutier's post conviction petition and the Illinois Supreme

Court affirmed the Circuit Court's dismissal. Subsequently, the Illinois Supreme Court denied

Cloutier's motion for a rehearing.

Cloutier now petitions this court for a writ of habeas corpus pursuant to 28 U.S.C.

---

[1] Steven D. Mote is currently the Warden at the Pontiac Correctional Center and is thus
the proper respondent in this habeas action. *See* Rule 2(a) of the Rules Governing Habeas
Corpus Cases under 28 U.S.C. § 2254. This court, therefore, hereby substitutes Mote as the
respondent. *See* Fed. R. Civ. P. 25(d)(1).

§ 2254, raising eighteen grounds for relief. After a careful review of the parties' pleadings, the applicable authorities, and the record, this court denies Cloutier's petition in its entirety.

## I.   JURISDICTION

Because Cloutier filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 100 Stat. 1214 ("AEDPA"), the AEDPA applies to his petition. *See Lindh v. Murphy,* 521 U.S. 320, 327 (1997). This is Cloutier's first petition and he filed it within one year after the conclusion of his post conviction proceedings in the Illinois state courts. This court, therefore, has jurisdiction to consider Cloutier's habeas petition. *See* U.S.C. § 2244 (b), (d)(1), & (d)(2); *Burris v. Parke,* 95 F.3d 465, 467 (7th Cir. 1996).

## II.   BACKGROUND

Under 28 U.S.C. § 2254(e)(1), unless a petitioner provides clear and convincing evidence to the contrary, a determination of a factual issue by a state court is presumed correct for the purposes of habeas review. *Todd v. Schomig,* 283 F.3d 842, 846 (7th Cir. 2002), *cert. denied,* 123 S.Ct. 184 (2002). Cloutier has not presented clear and convincing evidence rebutting the presumption of factual correctness. Therefore, this court adopts the factual background from the record and the opinions of the Illinois Supreme Court in *People v. Cloutier,* 156 Ill.2d 483 (1993) (direct appeal) (*Cloutier I*), *cert. denied,* 510 U.S. 1200 (1994); *People v. Cloutier,* 178 Ill.2d 141 (1997) (appeal after remand) (*Cloutier II*), *cert. denied,* 524 U.S. 906 (1998); and *People v. Cloutier,* 191 Ill.2d 392 (2000) (post conviction appeal) (*Cloutier III*).

### A.   Testimony at the Guilt Phase of Cloutier's Trial

Brenda Grubisch, the manager of a Chicago neighborhood bar where the victim, Alice

Cogler, worked, testified during the guilt phase of Cloutier's trial. On January 27, 1990, Cogler worked in the afternoon and early evening. Cogler remained at the bar after the end of her shift at 6 p.m. until the bar closed at 3 a.m. At closing time, only Grubisch, her husband, Cogler, and the petitioner, Cloutier, remained at the bar. Cloutier had frequented the bar daily for the prior month and had become friends with Grubisch.

At trial, Detective William Drish of the Chicago Police Department testified that after the police arrested Cloutier, he told the police that he left the bar with Cogler on the evening of January 27, 1990. Cloutier stated that they drove to a deserted area and Cogler performed oral sex on him and then they returned to the bar. When the bar was closing, Cogler told Grubisch that she was giving Cloutier a ride home. Cogler then left the bar with Cloutier in a two-door, brown Oldsmobile belonging to Cogler's fiancé.

According to Cloutier, they engaged in consensual intercourse in the front seat. They then moved to the backseat, where they again had consensual intercourse. Cloutier told the police that when he was on top of Cogler in the backseat, a thought told him to kill her. He then strangled Cogler with his hands. He placed his ear on her chest and, after hearing a heartbeat, he picked up a fan belt from the car's rear floor and strangled Cogler with it. After Cloutier killed Cogler, he covered her body with his coat and a pillow.

Cloutier's acquaintance, Jeffrey Sesak, testified at trial that in the early hours of January 28, 1990, at approximately 3:30 a.m., he saw Cloutier at another neighborhood bar and introduced Cloutier to Susan Bradford. Together with a group of people including Sesak and Bradford, Cloutier remained at the bar until it closed. Cloutier then left the bar with the group to continue the party at Sesak's home. Bradford and another man rode in one car, while Cloutier,

3

Sesak, and Sesak's girlfriend rode in the brown Oldsmobile. Sesak's girlfriend got into the front seat of the brown Oldsmobile. When Sesak attempted to get into the backseat, Cloutier stopped him with the explanation that a friend, whose head Sesak saw sticking out from beneath a coat, was sleeping in the backseat. Sesak then sat in the front seat 0while Cloutier drove. Sesak noticed that the interior lining above the front seat, the headliner, and the driver's side visor of the car were ripped.

Sesak also testified that after stopping at a liquor store, Bradford tried to place a 12-pack of beer in the backseat of the Oldsmobile, but Cloutier stopped her. Cloutier explained that he did not have a driver's license and did not want liquor in the car. Bradford returned to the other car and placed the beer in it. Upon arriving at Sesak's home, Sesak suggested that Cloutier's sleeping friend should come inside to "sleep it off." Cloutier declined, saying his friend could sleep in the car.

Bradford testified at trial that when the gathering at Sesak's house broke up, Cloutier offered her a ride home, and she reluctantly accepted. After initially heading in the direction of Bradford's home, Cloutier pulled into an alley explaining that he had to urinate. However, he locked the passenger door with one hand while he covered Bradford's mouth with his other hand. He told Bradford to do as he asked and that he did not want to hurt her. He then pulled Bradford's hair and turned her to face the backseat. Cloutier uncovered Cogler's dead body. He threatened Bradford that she would have a similar fate if she did not do what he asked.

According to Bradford, Cloutier began kissing and fondling her. She then removed her clothing. To stall for time, Bradford told Cloutier her necklace was caught on her shirt. As Cloutier began to untangle her necklace, Bradford jumped out of the car. Cloutier tried to pull

4

her back into the car by her hair, but failed. Following Bradford out of the car, Cloutier punched, kicked, and choked her. He left Bradford in the alley dressed only in her bra and slacks when something startled him. As he left, Cloutier threatened to find and kill Bradford.

Another trial witness, Elizabeth Halili, testified that on the same morning of January 28, 1990, she encountered Cloutier at the gas station where she worked. As Halili was opening the station for business, Cloutier helped her retrieve equipment used to measure gas levels. Cloutier then came into the station to buy a soft drink. As Halili began to make change, he grabbed her and took cash from the register. Cloutier then abducted Halili and forced her into the brown Oldsmobile and drove them to an alley. When Halili refused to undress, Cloutier ripped her blouse and began to choke her.

Halili testified that she tried to open the passenger door of the car, but it was locked and the lock post had been removed. Cloutier then showed Halili the body in the backseat and threatened that she would end up like the naked dead woman if she did not do what he said. Halili then removed her shoes and slacks. A struggle ensued during which Cloutier ripped Halili's underwear off and hit Halili in the face repeatedly. Halili scratched Cloutier, kicked him in the groin, and made a lunge for the open driver's door. She escaped. Cloutier then drove off and left Halili wearing only her torn blouse with a tank top underneath.

Marie Goodman testified at trial to a fourth similar incident that occurred that same morning. Goodman testified that she had known Cloutier since the prior Fall, having met him under a different name at the bar where she worked. Goodman testified that in the early hours of January 21, 1990, Cloutier and others had joined her for beers at her home. Thereafter, Cloutier arrived unannounced at Goodman's home on several occasions to ask her out, but Goodman

5

declined.

At approximately 7:30 a.m. on January 28, 1990, Cloutier appeared at Goodman's apartment and asked her to have a friend watch her three-year-old son so she could go to breakfast with him. When she refused, Cloutier asked if he could wash up because he had been in a fight. Cloutier then left her apartment, but returned between 10 a.m. and 10:30 a.m., at which time he again asked Goodman to have a friend watch her son.

Eventually both Goodman and her son went to breakfast with Cloutier. On their way back from the restaurant, Goodman testified that Cloutier tucked his hair in his jacket and placed her son on his shoulders as they approached several police cars. When they returned, Goodman's son went to play with a neighbor and Cloutier went into Goodman's apartment to use the bathroom. Once inside, Cloutier grabbed Goodman by her hair, pulled her down on a mattress, ripped her shirt off, choked her, and forced her to touch his genitals. Cloutier fled when Goodman's son returned.

On February 1, 1990, an Oak Lawn police officer, Thomas Scott, arrested Cloutier based on a police bulletin identifying him as the perpetrator in the Bradford and Halili incidents and as a suspect in two cases of missing women, one who was later identified as Cogler. Chicago Police Detective William Drish testified that although Cloutier had car keys in his pocket, he was on foot when arrested. Cloutier told the police that the keys belonged to Cynthia Cooney, who was the other missing woman.

Detective Drish testified at trial that Cloutier admitted that he killed Cooney in the early morning hours of January 29, 1990. Cloutier told the police that he had dumped Cooney's body in the Des Plaines River and told the police where her car was located. Detective Drish's partner,

6

Detective Frank Connolly, testified that when they recovered Cooney's body from the river she was wearing only part of a black camisole and a white bra had been stuffed down her throat. Detective Connolly also testified that the police recovered Cooney's jeans, which had a damaged zipper and the other half of her torn black camisole from a girder beneath the bridge near where her body was found.

## B.    Testimony at Sentencing on Remand

At the re-sentencing phase of Cloutier's trial conducted in January 1995, Detective Drish testified that following Cloutier's arrest, Cloutier admitted to the police that he had killed both Cogler and Cooney and disclosed where their bodies could be found. The evening of his arrest, Cloutier gave detailed statements, that he later signed, about the murders to Detective Drish and a Cook County Assistant State's Attorney in the presence of a court reporter. The Assistant State's Attorney read Cloutier's statements into the record before the jury at the eligibility stage of Cloutier's sentencing hearing.

### 1.    Eligibility Phase

According to Cloutier's statement, he visited a tavern called the Huggery on the evening of January 27, 1990. At about 9 p.m., Cloutier left the tavern accompanied by Cogler. Cloutier stated that Cogler performed oral sex on him and that they returned to the Huggery at around 10:00 p.m. or 10:30 p.m. where they remained until closing time. After they left the Huggery, Cloutier and Cogler drove Cogler's car near the Rose Meat Packing Company in Chicago where they engaged in sex.

Afterwards, Cloutier and Cogler held each other for a few minutes. Cloutier then began choking Cogler with his hands. After determining that Cogler still had a heartbeat, Cloutier

wrapped a fan belt around Cogler's throat. Cloutier squeezed the fan belt until Cogler's lips were blue and he could no longer detect a heartbeat. He then covered Cogler's body with some clothing and left her on the backseat. Cloutier eventually transferred Cogler's body to the trunk of the car. He then abandoned the car.

Cloutier also stated on the record that he met Cooney on the evening of January 29, 1990, at a tavern called Panama Sid's. Cloutier and Cooney left the bar around 12:30 a.m. or 1 a.m. and drove Cooney's car to Summit, Illinois, where they engaged in sex. Cloutier stated that he and Cooney held each other for a while. Cloutier then started choking Cooney with his hands. When Cloutier believed that Cooney was dead, he drove to Willow Springs, Illinois, and disposed of Cooney's body in the Des Plaines River.

Also during the eligibility stage, the State presented the testimony of Chicago Police Detective Drish, regarding conversations he had with Susan Bradford and Elizabeth Halili, both of whom reported being attacked by Cloutier. According to Detective Drish's testimony, Bradford recounted that on the morning of January 28, 1990, she was at a bar when she met an individual with long blond hair named Bob, who was in fact, Cloutier. A group of people left the bar and proceeded to a friend's home to continue their party. After the party broke up, "Bob" offered Bradford a ride home. During the drive home, Cloutier began to struggle with her. He tore Bradford's clothes and grabbed her breasts. At one point, he grabbed Bradford by the hair and turned her head toward the backseat of the car where she saw the body of a white female. Bradford escaped from the car. After she started screaming, Cloutier drove away. The incident described by Bradford occurred approximately two to three hours after Cogler's murder.

Halili reported to Detective Drish that on the morning of January 28, 1990, she was

8

working as a gas station attendant when she encountered a man with long blond hair worn in a ponytail. This man took cash from the station's cash register and forced Halili into a brown Oldsmobile. He then ordered her to remove her clothes and tore at parts of her clothing. Halili told Detective Drish that her attacker grabbed her hair and turned her head toward the backseat where she saw the body of a white female. Halili was able to escape from the vehicle, and her attacker drove off.

Because the re-sentencing jury was a different jury than the one at the guilt phase of Cloutier's trial, the State also presented evidence that Cloutier had been found guilty by a jury of first degree murder and aggravated criminal sexual assault of Cogler. The State also presented evidence that Cloutier had pleaded guilty to the same charges in connection with Cooney's death.

Based on this evidence, the jury unanimously determined that Cloutier was eligible for the death penalty for the murder of Cogler based on two separate factors under the Illinois Death Penalty statute: (1) Cogler's murder occurred during the course of another felony, aggravated criminal sexual assault; and (2) Cloutier had been convicted of murdering two or more individuals, Cogler and Cooney.

### 2.    Aggravating/Mitigating Evidence

#### a.    Evidence in Aggravation

Thereafter, the jury heard evidence of aggravating factors. Bradford and Halili testified about Cloutier's attacks that Detective Drish had described during the eligibility stage. Marie Goodman testified that Cloutier attacked her during the same time period. Specifically, Goodman testified that she had met Cloutier in September 1989. She testified that at about 7 a.m. on January 28, 1990, Cloutier arrived, uninvited, at her home. Cloutier claimed he had been

9

in a fight and had visible scratch marks on his chin, neck, and wrist. After a few minutes, he departed from Goodman's apartment. Cloutier returned at around 10:30 a.m. and took Goodman and her young son out for breakfast. After they returned from breakfast, Cloutier attacked Goodman. He placed his thumb at the base of her throat so that she was barely able to breathe. Cloutier physically placed Goodman's hand on his penis and tore open her shirt. When Goodman's son entered the room, Cloutier left.

In addition, a number of State witnesses provided accounts of several robberies committed by Cloutier in 1983. Their testimony revealed that Cloutier targeted convenience stores, gas stations, and liquor stores. In October 1983, while driving a stolen vehicle, Cloutier led Chicago police on a high-speed chase that ended when Cloutier collided with a police vehicle.

The parties stipulated that Cloutier entered the Department of Corrections in 1983 to serve four 12-year sentences for armed robbery and a three-year sentence for theft. These sentences were to be served concurrently. The parties further stipulated that Cloutier was "paroled" in September 1989. In fact, Cloutier was not paroled, but was released as a result of the accumulation of good conduct credits under the Illinois Unified Code of Corrections.

Additional aggravating evidence came in through Robert Crouch, a Springfield, Illinois police officer. He testified that on the morning of October 28, 1989, he observed Cloutier striking a woman in the head and face with a large chain. The woman told Officer Crouch that Cloutier was her boyfriend and that he had become angry with her, dragged her down the street with the chain around her neck, and began beating her with the chain. Based on this incident, the parties stipulated that Cloutier returned to prison because of a violation of the terms of his

10

"parole." In late December 1989, Cloutier was again released from custody. After his release, Cloutier engaged in a spree of armed robberies in January 1990 before being arrested for the Cogler and Cooney murders.

The parties also stipulated that during his incarceration from 1983 to 1989, Cloutier received a total of 52 disciplinary tickets from Department of Corrections personnel. Between August 1991 and January 1995, Cloutier received five disciplinary tickets while incarcerated for the Cogler and Cooney murders.

### b.  Evidence in Mitigation

As evidence in mitigation, Cloutier presented the testimony of Dr. Lawrence Heinrich, a clinical psychologist. Based on psychological testing, interviews with Cloutier, and reviewing documents relating to Cloutier's criminal history and personal background, Dr. Heinrich concluded that Cloutier suffered from antisocial personality disorder and mixed substance abuse disorder. Also, Dr. Heinrich concluded that Cloutier showed some traits of narcissistic personality disorder.

Dr. Heinrich testified that antisocial personality disorder is characterized by defects in interpersonal relationships and a lack of conscience and social sensitivity and is commonly associated with criminal or delinquent behavior. Mixed substance abuse disorder involves the abuse of a variety of drugs and alcohol in such a manner that the toxic effects of the substances tend to aggravate each other. Narcissistic personality disorder is characterized by self-centeredness, a tendency to be grandiose in pleasure seeking, and a lack of empathy.

In connection with his evaluation, Dr. Heinrich reviewed a biographical sketch of Cloutier prepared by Cloutier's mother. The biography indicated that Cloutier was raised by his

mother along with his four sisters. Cloutier never did fit in or feel connected with the rest of his family. He was abusing drugs and alcohol by the time he was in high school. During his teen years, Cloutier spent time in juvenile detention facilities. At one point while Cloutier was in a facility, his family moved without telling him where they could be found.

Dr. Heinrich further noted that Cloutier had been ordered to participate in an alcohol abuse program as a condition of his supervised release from prison. Dr. Heinrich noted that persons suffering personality disorders often use drugs and alcohol for purposes of self-medication to soothe the unpleasant feelings associated with their disorders. He believed that drugs and alcohol influenced Cloutier's behavior and impaired his judgment when he attacked and killed the women in late January 1990.

Alvin Hill, the coordinator of the Cook County Public Defender's Sentencing Advocacy Program, also testified on Cloutier's behalf elaborating on the biographical information supplied by Cloutier's mother. Hill spoke with Cloutier's mother who indicated that Cloutier's life changed drastically when he was thirteen years old. He no longer took pride in himself, started to be vicious to his sisters, and substantially withdrew from family life. He also experienced problems with truancy and stole money from the family.

Hill also testified about conversations with Cloutier. Cloutier expressed his love and loyalty to his family, but said that his family did not understand him. Cloutier was adamant that his family not be asked to testify on his behalf. He related that he began using alcohol at about the age of ten and street drugs when he was thirteen. Cloutier also indicated that he was "drugging" at the time of Cogler's murder. He expressed remorse for his crimes and the suffering he inflicted on the victims' families and on his own family.

12

The jury found that there were no mitigating factors sufficient to preclude imposition of the death penalty.

## III.    HABEAS CORPUS STANDARD

Pursuant to the AEDPA, this court must deny Cloutier's petition for a writ of habeas corpus with respect to any claim adjudicated on the merits in a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000) (O'Connor, J.).[2] A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Id.* at 405. In turn, a state court's decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

"When the case falls under § 2254(d)(1)'s 'contrary to' clause, we review the state court decision de novo to determine the legal question of what is clearly established law as determined by the Supreme Court and whether the state court decision is 'contrary to' that precedent. When

---

[2]    Justice O'Connor, joined by Chief Justice Rehnquist and Justices Scalia, Kennedy, and Thomas, delivered the opinion of the Supreme Court regarding the standard of review interpretation under 28 U.S.C. § 2254(d)(1).

the case fits under the 'unreasonable application of' clause of § 2254(d)(1), however, we defer to

a reasonable state court decision." *Anderson v. Cowan,* 227 F.3d 893, 896-97 (7th Cir. 2000)

(internal citations omitted). A state court satisfies the reasonableness standard if its application is

"at least minimally consistent with the facts and circumstances of the case." *Spreitzer v. Peters,*

114 F.3d 1435, 1442 (7th Cir. 1997) (citation omitted); *see also Hardaway v. Young,* 302 F.3d

757, 762 (7th Cir. 2002) (unreasonable application defined as outside the boundaries of

permissible differences of opinion). With these standards in mind, the court turns to Cloutier's

§ 2254 petition.

## IV.    EXHAUSTION AND PROCEDURAL DEFAULT

This court may only address the merits of Cloutier's habeas petition if he has exhausted

his state remedies and avoided procedural default under Illinois law as to each claim. *Bocian v.*

*Godinez,* 101 F.3d 465, 468 (7th Cir. 1996).

### A.    State Exhaustion Requirements

Before a federal court may consider habeas relief to a state prisoner, the prisoner must

exhaust his state court remedies, that is, the petitioner must give the state courts an opportunity to

act on his claims before he presents those claims to the federal court in a § 2254 petition. *See*

*O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999); *Mahaffey v. Schomig,* 294 F.3d 907, 914-15

(7th Cir. 2002). State remedies are exhausted when they are presented to the highest court for a

ruling on the merits, *see Boerckel,* 526 U.S. at 844-45, or when no means of pursuing review

remain available. *Id.* at 847 (citing 28 U.S.C. § 2254(c)).

**B.    Procedural Default**

Procedural default occurs when a petitioner fails to assert a claim that could have been brought in the state court and the time for asserting the claim to the state court has passed. *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir. 1992). This happens when the petitioner fails to pursue all appeals required by state law, *see Coleman v. Thompson,* 501 U.S. 722, 735 n. 1 (1991), fails to fully and fairly present his federal claims to the state court, *see Boerckel,* 526 U.S. at 844, or when the state court did not address the petitioner's federal claim because the petitioner failed to meet independent and adequate state procedural requirements. *See Stewart v. Smith,* 122 S.Ct. 2578, 2581 (2002) (federal courts cannot review questions of federal law if state court decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment). If an Illinois Appellate Court concludes that a claim is waived, that holding constitutes an independent and adequate state ground. *Aliwoli v. Gilmore,* 127 F.3d 632, 634 (7th Cir. 1997).

**C.    Cause, Prejudice, and Fundamental Miscarriage of Justice**

If a claim is procedurally defaulted, this court may still reach the merits of the barred claim, if the petitioner establishes either: (1) cause for his failure to follow a rule of state procedure and actual prejudice; or (2) that the default will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman,* 501 U.S. at 750. The existence of cause typically turns on whether the petitioner can demonstrate that some objective factor external to the defense hindered his ability to comply with a state's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To establish a fundamental miscarriage of justice, the petitioner must present new and convincing evidence of his innocence by showing that it is

more likely than not that no reasonable juror would convict him in light of the new evidence. *See*

*Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

## V. ANALYSIS

Cloutier's § 2254 petition contains eighteen counts:

(1) he was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments where counsel failed to interview or present an occurrence witness whose corroborative, favorable, and exculpatory testimony supported his consent defense;

(2) he was denied due process and a fair trial, in violation of the Fifth, Sixth, and Fourteenth Amendments, where prosecutors suppressed favorable evidence that corroborated his consent defense;

(3) he was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments where counsel failed to conduct an adequate factual and legal investigation into his insanity defense, and thus weakened his consent defense;

(4) he was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments in connection with his negotiated guilty plea to the murder of Cynthia Cooney;

(5) his guilty pleas to first degree murder and aggravated criminal sexual assault in connection with the Cooney case and his guilty pleas to the remaining charges were not freely, voluntarily, or knowingly made in violation of the Fifth and Fourteenth Amendments;

(6) he was denied due process of law in violation of the Fourteenth Amendment because his death sentence involved an unfair and improper double enhancement of the assault and murder charges;

(7) the prosecutor's use of the murder conviction in the Cooney case violated his rights under the Eighth and Fourteenth Amendments;

(8) he was denied effective assistance of counsel at his sentencing hearing in violation of the Sixth and Fourteenth Amendments where counsel failed to interview or present an occurrence witness whose corroborative, favorable, and exculpatory testimony supported his consent defense;

(9) he was denied due process and a fair capital sentencing hearing in violation of the Fifth, Sixth, and Fourteenth Amendments where prosecutors suppressed favorable evidence that corroborated his consent defense;

(10) he was denied his right to confront witnesses and his right to a fair capital sentencing hearing in violation of the Fifth, Sixth, and Fourteenth Amendments when the prosecution introduced hearsay testimony concerning sexual assaults of other victims;

(11) he was denied effective assistance of counsel at his sentencing hearing in violation of the Sixth and Fourteenth Amendments where counsel failed to conduct an adequate legal and factual investigation at the eligibility phase at sentencing;

(12) he was denied constitutionally effective and conflict-free assistance of counsel at the penalty phase of his trial in violation of the Sixth and Fourteenth Amendments;

(13) he was denied his right under the Sixth and Fourteenth Amendments to effective assistance of counsel at capital sentencing where his trial counsel stipulated that he was "paroled," when in fact Illinois had abolished parole, and the state argued that parole was indicative of "all kinds of breaks" he received from the criminal justice system;

(14) the prosecution's use of evidence and argument unrelated to the instant offense violated his right to a fair capital sentencing hearing under the Eighth and Fourteenth Amendments;

(15) he was denied a fair eligibility determination and a fair capital sentencing hearing under the Eighth and Fourteenth Amendments and due process of law under the Fourteenth Amendment where the prosecutor engaged in inappropriate argument;

(16) the post conviction court denied him due process by summarily dismissing his claims of constitutional deprivation without a hearing;

(17) he was denied his rights under the Fourteenth Amendment to due process and equal protection because the state supreme court ignored its precedents and invoked a novel procedural bar to deny consideration of his ineffective assistance of counsel claim in connection with his negotiated plea in the Cooney case; and

(18) the Illinois Pattern Instructions used at the penalty phase were unconstitutionally vague and confusing, resulting in the likelihood that the death penalty was arbitrarily and erroneously imposed.

### A.   Ineffective Assistance of Counsel Claims (Claims 1, 3, 8, 11, 12, & 13)

Cloutier raises six habeas claims regarding his attorneys' allegedly ineffective assistance

of counsel during his trial and sentencing.  To render effective assistance of counsel under the

Sixth Amendment to the United States Constitution, counsel's performance must satisfy the well-

known *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Under the first prong of the *Strickland* standard, Cloutier must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. The second *Strickland* prong requires Cloutier to establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If a defendant fails to make a proper showing under one of the *Strickland* prongs, the court need not decide the remaining prong. *See Strickland,* 466 U.S. at 697; *Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2002).

With respect to the *Strickland* performance prong, there is a strong presumption that counsel's performance was constitutionally adequate. *Id.* at 689; *see also Bell v. Cone,* 122 S. Ct. 1843, 1854 (2002)("[A] court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."). "There are countless ways to provide effective assistance in any given case," therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689-90 (citation and quotation omitted).

In turn, in the context of his capital sentencing, the *Strickland* prejudice prong requires Cloutier to show that "there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695. Ultimately, "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have

been different absent the errors." *Id.* at 696.

## 1. Consent Defense (Claims 1 & 8)

In Claims 1 and 8, Cloutier asserts that his lawyers failed to interview or present Brenda

Grubisch as a defense witness at both the guilt and sentencing phases of his trial and thus,

inadequately investigated his consent defense to the charge of aggravated criminal sexual assault.

In Grubisch's affidavit attached to Cloutier's post conviction petition, she stated that Cloutier and

Alice Cogler "were together" the night of Cogler's murder and that Cogler and Cloutier had left

the bar together and returned an hour later where they stayed until closing time. Also, Grubisch

described them as "a couple for the night." Cloutier argues that Grubisch's statements

corroborate his defense that Cogler and he had consensual sex the night of her murder.

The Illinois Supreme Court concluded that counsels' decision not to present Grubisch as

a defense witness did not prejudice Cloutier, stating:

> [E]ven if defense counsel had contacted Grubisch prior to trial and elicited the
> statements contained in her affidavit, there is no reasonable probability that the
> outcome of the trial and sentencing would have been different. Evidence
> presented at trial overwhelmingly indicated that Cogler was sexually assaulted
> before petitioner strangled her, a finding upheld by this court in petitioner's direct
> appeal. Specifically, petitioner told police that he strangled Cogler with a fan belt
> while lying on top of her in the backseat of Cogler's car and that she did not put
> up a fight, facts supported by the gross disparity in size between petitioner and the
> victim. The fan belt was still around Cogler's neck when her body was found.
> Fresh bruises and abrasions, however, were found on Cogler's forehead, elbow,
> knees and thigh, suggesting the use of force. The headliner and visor in Cogler's
> car were torn, also indicating a struggle took place in the front seat of the car.
> Most damning, however, was the other-crimes evidence produced by the State at
> trial showing a common design or plan by petitioner to sexually assault and
> strangle several women in Cogler's car within the space of a few hours of
> Cogler's murder. The jury further heard evidence of petitioner's initial statement
> to police regarding the Cooney sexual assault and murder in which he also
> claimed to have engaged in consensual sexual intercourse before killing her.

19

Furthermore, Grubisch's statements that petitioner and Cogler were acting like a couple for the night and that they left the bar together once earlier add nothing new to Grubisch's testimony for the State at trial that the two were on friendly terms before leaving the bar. Specifically, Grubisch testified that Cogler voluntarily left with petitioner at closing time and planned to drive him home. Nevertheless, the jury still found that petitioner sexually assaulted Cogler in her car. Thus, petitioner was not prejudiced by defense counsel's failure to bring forward Grubisch's additional testimony now contained in her affidavit.

*Cloutier III,* 191 Ill.2d at 398-99 (citations omitted).

Cloutier contends that the Illinois Supreme Court's conclusion is an unreasonable application of the *Strickland* prejudice prong. This court, however, would be hard-pressed to conclude that the Illinois Supreme Court's finding is outside the boundaries of permissible differences of opinion, *see Hardaway,* 302 F.3d at 762, and thus, unreasonable. The Illinois Supreme Court concluded that there was no reasonable probability that the outcome of the trial and sentencing would have been different, *see Strickland,* 466 U.S. at 694, because the evidence presented at trial overwhelmingly indicated that Cloutier sexually assaulted Cogler before he strangled her. *See Cloutier III,* 191 Ill.2d at 398. The Illinois Supreme Court supported its conclusion that Cloutier was not prejudiced by counsel's failure to present Grubisch as a defense witness because as a State witness, Grubisch testified that Cloutier and Cogler were on friendly terms and that Cogler voluntarily left the bar with Cloutier. *See id.* at 399.

Cloutier, however, argues that this court should consider the cumulative effect of counsels' performance during the course of the guilt phase of his trial in order to find prejudice under these claims regarding his consent defense. A petitioner can establish ineffective assistance of counsel by showing that "the cumulative effect of counsel's individual acts or omissions was substantial enough to meet *Strickland's* test." *Williams v. Washington,* 59 F.3d

673, 682 (7th Cir. 1995).

Cloutier makes this argument for the first time to this court. While a petitioner need not cite "book and verse of the federal constitution" to present a constitutional claim, he must nevertheless "raise the red flag of constitutional breach" in state court or his claims will be barred from federal collateral review. *See Bocian*, 101 F.3d at 469-70; *Verdin v. O'Leary*, 972 F.2d 1467, 1474-75 (7th Cir. 1992). Prior to his habeas petition, Cloutier did not raise the red flag that the cumulative effect of his counsels' alleged errors at trial prejudiced him in the context of his consent defense. Because Cloutier has not argued cause, prejudice, or that a miscarriage of justice prohibited him from bringing this claim to the state courts, *see Coleman*, 501 U.S. at 750, this court is procedurally barred from reviewing this new prejudice argument.

Last, the Illinois Supreme Court was not required to examine counsel's performance because the court reasonably applied *Strickland* in determining that Cloutier was not prejudiced by counsel's failure to present Grubisch as a defense witness. *See Strickland*, 466 U.S. at 697 (courts need not examine performance prong, if defendant makes insufficient showing of prejudice prong). Therefore, the Illinois Supreme Court's decision as to Claims 1 and 8 was not contrary to the *Strickland* standard nor was the court's application of *Strickland* unreasonable.

### 2.    Insanity Defense (Claim 3)

Cloutier next contends that he was denied effective assistance of trial counsel because counsel failed to conduct an adequate factual and legal investigation into his insanity defense, thus weakening his consent defense. In addition, Cloutier argues that his trial counsel concocted his insanity defense. Although Cloutier's claim that counsel did not conduct an adequate factual or legal investigation into the insanity defense is stated in his post conviction petition to the

Illinois Supreme Court, he made no legal argument supporting this claim in his memoranda to the Illinois Supreme Court on post conviction review.

Due to federal-state comity, a petitioner seeking habeas relief in federal court must establish that he has "fully and fairly" presented his claims to the state courts. *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002); *see also Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). A full and fair presentment requires that the petitioner present both the operative facts and controlling legal principles to the state court – a mere reference to a constitutional issue is not enough. *Chambers*, 264 F.3d at 737-38. If a habeas claim is not fully and fairly presented to the state courts, federal courts are procedurally barred from reviewing the claim. *Id.* at 737.

Under these standards, because Cloutier did not present the legal principles or provide any legal argument in support of his claim, this court concludes that Cloutier failed to fully and fairly present this claim to the Illinois courts. In addition, Cloutier has made no argument as to cause, prejudice, or a miscarriage of justice, *see Coleman*, 501 U.S. at 750, and thus, this court is barred from considering this claim on collateral review.

### 3.     Ineffective Assistance of Counsel During Eligibility Phase (Claim 11)

In Claim 11, Cloutier asserts that his counsel at the eligibility phase of sentencing, Stephen Richards, was ineffective because Richards did not adequately investigate the circumstances surrounding Cloutier's guilty plea in the separate Cooney proceeding.

The Illinois Supreme Court rejected Cloutier's argument, stating:

> [W]e do not believe counsel's representation of petitioner at his eligibility hearing
> fell below an objective standard of reasonableness. Petitioner does not claim that
> Richards failed to conduct any investigation before defending him at the eligibility
> phase of his sentencing. Indeed, the motions in limine filed by Richards
> necessarily required investigation into the circumstances surrounding his guilty

plea to the Cooney murder. It was not unreasonable for Richards to forego
additional investigation into why petitioner changed his plea from not guilty to
guilty in the Cooney murder. The motions in limine filed by Richards seeking to
bar use of the prior murder conviction, though ultimately unsuccessful, constituted
a reasonable level of assistance.

*Cloutier III,* 191 Ill.2d at 403 (citations omitted).

This court concludes that the Illinois Supreme Court reasonably applied the *Strickland*

standard in evaluating and denying Cloutier's claim that his counsel's performance at the

eligibility stage of sentencing was constitutionally ineffective. The Illinois Supreme Court

concluded that once counsel knew the State intended to use the Cooney conviction as an

additional basis for finding Cloutier death eligible, counsel filed motions in limine asking the

court to bar the use of the guilty plea. *Id.* at 402. Implicit in filing these motions is that counsel

researched and understood the circumstances surrounding the Cooney plea. *See id.* at 403.

Deferring to counsel's judgment and based on the premise that counsel need only make a

reasonable investigation, the Illinois Supreme Court concluded that counsel's representation of

Cloutier did not fall below an objective standard of reasonableness. *Id.* at 402-03.

Cloutier's assertion that his defense counsel were poorly coordinated throughout the

sentencing hearing does not change this conclusion because the Illinois Supreme Court's analysis

and conclusion squares with the *Strickland* presumption that Richards' conduct fell within the

wide range of reasonable professional assistance of counsel. *See Strickland,* 466 U.S. at 689-90

("there are countless ways to provide effective assistance in any given case"). While Cloutier

insists that there is a reasonable probability that, but for counsel's failures in investigating the

Cooney plea, the outcome of the eligibility phase of his sentencing would have been different,

this court finds the chances of such a result are not reasonably probable. Nevertheless, this court

23

need not determine whether Cloutier was prejudiced as a result of his counsel's alleged

ineffective assistance at the eligibility phase of his sentencing because the Illinois Supreme Court

reasonably applied *Strickland* in determining that counsel's performance was not constitutionally

ineffective. *See Strickland*, 466 U.S. at 697 (courts need not examine prejudice prong, if

defendant makes insufficient showing of performance prong). Therefore, the Illinois Supreme

Court's decision was not contrary to the *Strickland* standard nor was the court's application of

*Strickland* unreasonable.

### 4. Denial of Constitutionally Effective and Conflict-Free Counsel During the Mitigation Phase of Sentencing (Claim 12)

Next, Cloutier contends that he was denied effective assistance of counsel at the

mitigation phase of sentencing because the evidence presented at mitigation was inaccurate,

harmful, and "in no way mitigating." Cloutier also claims that counsel's decision to present Dr.

Lawrence Heinrich's testimony at mitigation was motivated by a conflict of interest.

In rejecting Cloutier's argument that his counsel was ineffective at mitigation, the Illinois

Supreme Court stated:

> At sentencing, the defense presented evidence in mitigation attempting to
> show that petitioner's offenses were the result of his polysubstance abuse and
> antisocial and narcissistic personality disorders. Dr. Lawrence Heinrich, a
> psychologist, testified for the defense that he believed petitioner was suffering
> from an extreme mental or emotional disturbance at the time he committed the
> Cogler and Cooney murders. The defense also presented testimony from Alvin
> Hill, a mitigation specialist employed by the Cook County public defender's
> office, who opined that petitioner committed the murders because he was
> "drugging."
>
> .....
>
> We further find no error with regard to the allegedly inaccurate evidence
> presented in mitigation. In his post-conviction petition, petitioner relies on a
> report prepared by Marylynne Kaplan, a social worker, which cites scientific

evidence allegedly showing that petitioner's criminal history was not the result of his "drugging," but rather was the product of his dysfunctional family history, a childhood plagued by violence and a mother who was emotionally distant and depressed. A review of the record, however, reveals that, while the primary theory advanced by the defense was that petitioner's actions were the product of his impaired judgment due to drug and alcohol abuse and personality disorders, the jury also heard testimony of petitioner's failure to find a place within his family, his rejection by his mother, his inability to relate to female members of his family including his four sisters, and his lack of a male role model while growing up. Alvin Hill also testified in mitigation regarding petitioner's drug use since the age of 12, his constant truancy throughout adolescence, his running away from home, his mother's abandonment of him, and his placement with juvenile authorities on several occasions. Given the extent of the testimony heard by the jury regarding petitioner's troubled childhood and family dysfunction, we believe that the additional information contained in Kaplan's report is merely cumulative of that already presented and would not have changed the outcome of petitioner's sentencing. Thus, petitioner has failed to demonstrate that he suffered prejudice from defense counsel's failure to present the information found in Kaplan's report at sentencing.

*Cloutier III*, 191 Ill.2d at 403-05.

This court recognizes that some mitigation testimony contains material that a jury may consider as aggravating instead of mitigating. *See Burger v. Kemp,* 483 U.S. 776, 793-94 (1987) (mitigation is in the eye of the beholder); *see also Foster v. Schomig*, 223 F.3d 626, 637 (7th Cir. 2000) (presence of emotional or mental disturbance may be considered an aggravating factor); *Lear v. Cowan*, 220 F.3d 825, 829 (7th Cir. 2000) (possible mitigation evidence that petitioner was neurotic, had an antisocial personality disorder, or a characterological disorder of the asocial type, "strikes us as fancy language for being a murderer").

Nevertheless, this court concludes that the Illinois Supreme Court's decision that Cloutier was not prejudiced by the evidence at mitigation concerning his antisocial behavior and substance abuse was not contrary to the *Strickland* standard. As the Illinois Supreme Court concluded, other evidence offered at mitigation including that of Cloutier's childhood,

background, and family, supported his contention that his troubled childhood and dysfunctional family contributed to his criminal background.

Cloutier also contends that the Illinois Supreme Court's review of his ineffective assistance of mitigation counsel claim was an unreasonable application of *Strickland* because the court did not focus on counsel's motivation in calling Dr. Heinrich, which is the basis of his conflict of interest claim. In his post conviction memorandum to the Illinois Supreme Court, Cloutier suggests that counsel "may well have been influenced in her decision to call Dr. Heinrich by legitimate concerns regarding further exposure of her impropriety." This alleged impropriety was that defense counsel manufactured Cloutier's insanity defense at the guilt phase of his trial. Cloutier argues that counsel chose Dr. Heinrich because his testimony would not offend the prosecutors, and thus, would obviate the need for the prosecution witness who would ultimately attack defense counsel's conflict of interest.

Contrary to Cloutier's assertion, the Illinois Supreme Court did address the claim that Cloutier's counsel at sentencing was motivated by a conflict of interest, stating:

> Petitioner argues that Marijane Placek, lead counsel during the aggravation - mitigation phase of petitioner's sentencing hearing, may have been influenced in her defense by a fear of later claims of ineffectiveness and thus acted under a conflict of interest. Petitioner's claims, however, are unsupported by the record or by affidavits, and amount to no more than speculation.

*Cloutier III,* 191 Ill.2d at 406.

Whether the Illinois Supreme Court properly applied the *Strickland* standard to Cloutier's conflict of interest claim is irrelevant because *Strickland* is not the controlling Supreme Court precedent under these circumstances. In evaluating whether a conflict of interest exists, courts use a more relaxed standard than *Strickland,* as recently clarified by the United States Supreme

Court in *Mickens v. Taylor,* 122 S.Ct. 1237, 1240-46 (2002); *see also Cuyler v. Sullivan,* 446 U.S. 335, 349-50 (1980). Under this relaxed standard, if Cloutier can demonstrate that his counsel had an actual conflict of interest and the conflict affected his counsel's performance, the *Strickland* prejudice prong need not be demonstrated. *See Mickens,* 122 S.Ct. at 1243. An actual conflict of interest exists when a defense attorney is required to make a choice advancing her own interests to the detriment of her client's interests. *See United States v. Pergler,* 233 F.3d 1005, 1009 (7th Cir. 2000).

Here, the Illinois Supreme Court correctly concluded that there was not an actual conflict of interest when it determined that Cloutier's claim was unsupported by the record and speculative. *See Cloutier III,* 191 Ill.App. 2d at 406. As such, Cloutier does not get the benefit of presumed prejudice under the *Mickens* standard because he did not establish that an actual conflict existed in the first instance. The Illinois Supreme Court was not required to follow a formulaic analysis in order to reasonably apply Supreme Court precedent – simply applying the correct standard to the facts and circumstances of the case is sufficient under the AEDPA. *See Spreitzer,* 114 F.3d at 1442; *see also Early v. Packer,* 123 S.Ct. 362, 365 (2002) (under AEDPA state courts not required to cite United States Supreme Court cases or even be aware of such case law, as long as neither the reasoning nor result of the state court decision contradicts them). Therefore, this court concludes that the Illinois Supreme Court's decision was a reasonable application of clearly established Supreme Court law.

### 5.     Stipulation that Cloutier Was "Paroled" (Claim 13)

Cloutier claims that his counsel at sentencing was constitutionally ineffective because counsel stipulated that Cloutier was "paroled" when, in fact, Cloutier was on mandatory

27

supervised release after serving the sentences for his 1983 convictions. Cloutier asserts that as a result of this stipulation, prosecutors used the term "parole" to persuade the jury that Cloutier received "all kinds of breaks from the criminal justice system."

While discussing Cloutier's claim that the prosecution's use of the term "parole" violated his due process rights – a claim not before this court on collateral review – the Illinois Supreme Court concluded that the prosecution's use of the term parole did not constitute plain error. *See Cloutier II,* 178 Ill.2d at 168. Specifically, the court stated:

> The thrust of the remark regarding parole was that defendant exhibited a brazen disregard of the law, as was evident in the commission of violent crimes shortly after his release from prison. In this context the distinction between release resulting from the accumulation of good-conduct credits as opposed to release on parole is unimportant, and the mischaracterization could not have affected the jury's sentencing decision. Defendant also contends that by mischaracterizing his release as a "parole," the State bolstered its argument that defendant received "all kinds of breaks from the criminal justice system." However, this was merely an isolated remark: it was not a major theme in the State's argument which mainly focused on defendant's background, and the circumstances of the murder of Alice Cogler and defendant's other crimes in late January 1990.

*Id.*

Accordingly, when examining Cloutier's ineffective assistance claim based on his counsel's stipulation to the term parole, the Illinois Supreme Court concluded:

> [D]efendant claims that his attorney's inaccurate stipulation that defendant had been "paroled" represents ineffective assistance of counsel insofar as the stipulation facilitated the State's erroneous argument. As discussed earlier a criminal defendant asserting ineffective assistance of counsel must show prejudice, which exists when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Since we have already concluded that the prosecution's mischaracterization of the basis for defendant's release could not have affected the jury's sentencing decision, defendant cannot establish prejudice.

*Id.* at 169.

Cloutier claims that the Illinois Supreme Court's conclusion that he was not prejudiced by his counsel's stipulation to the term parole was "contrary to" the principles established in *Strickland* because the court used a plain error analysis when evaluating his separate due process claim. However, in concluding that the basis of Cloutier's release did not affect the jury's ultimate decision, the Illinois Supreme Court articulated that the distinction between release resulting from the accumulation of good-conduct credits as opposed to release on parole was an unimportant distinction. *See Cloutier II,* 178 Ill.2d at 168. The Illinois court also substantiated its conclusion that Cloutier was not prejudiced by the stipulation because the prosecutor's comment regarding Cloutier's "breaks from the criminal justice system" was an isolated remark. *Id.* At no time during its straight-forward *Strickland* analysis did the court evoke a plain error analysis as Cloutier claims.

Cloutier next argues that this court should consider the cumulative effect of counsels' allegedly deficient performance during the course of his re-sentencing hearing in order to find prejudice under this claim. Because Cloutier makes this argument for the first time to this court, he must establish cause, prejudice or a fundamental miscarriage of justice to overcome procedural default, *see Coleman,* 501 U.S. at 750, which he has failed to do. Therefore, this court is barred from reviewing this claim.

Finally, because the Illinois Supreme Court correctly concluded that counsel's alleged error was not prejudicial, this court need not examine whether counsel's performance was constitutionally inadequate. *See Strickland,* 466 U.S. at 697 (courts need not examine performance prong, if petitioner makes insufficient showing of prejudice prong). Accordingly,

29

the Illinois Supreme Court's decision was not contrary to the *Strickland* standard, nor was the court's application of *Strickland* unreasonable.

### B.  Cooney Claims (Claims 4 & 5)

In Claim 4, Cloutier contends that his counsel in the Cooney case were constitutionally ineffective because they allowed him to plead guilty to murder and aggravated criminal sexual assault without advising him that his conviction in Cooney could be used as an eligibility factor for the death penalty in the present case involving the murder of Alice Cogler. In Claim 5, Cloutier asserts that his guilty plea in the Cooney case was not knowingly and voluntarily made and hence, violated his rights under the Fifth and Fourteenth Amendments.

Prosecutors charged Cloutier with the first degree murder and aggravated criminal sexual assault of Cynthia Cooney in a separate proceeding. Cloutier pleaded guilty to these charges and was sentenced to an agreed term of life in prison. By making the arguments that his counsel in Cooney were ineffective and that his plea in the Cooney matter was involuntary, Cloutier fails to recognize that the Cooney matter is separate from the case at hand. As the Illinois Supreme Court noted: "Petitioner, however, may not raise a challenge to the conduct of his counsel in the Cooney case in this wholly separate proceeding. This court's review is limited to the proceedings which resulted in his convictions for crimes committed against Alice Cogler only." *Cloutier III*, 191 Ill.2d at 401.

Cloutier's post conviction petition to the Illinois courts was based on his convictions in the Cogler matter – it did not encompass his guilty plea in Cooney. Because the Illinois Supreme Court's review of Cloutier's post conviction proceedings was limited to the convictions being challenged in the Cogler matter, the court was barred from reviewing any claim based on the

Cooney guilty plea. *See People v. Page*, 193 Ill.2d 120, 145 (2000) (Illinois Supreme Court cannot review ineffective assistance challenge in separate case involving same defendant).

Furthermore, this court does not have jurisdiction to consider Cloutier's Cooney claims. *See Okoro v. Bohman*, 164 F.3d 1059, 1063 (7th Cir. 1999) (courts have jurisdiction to determine own jurisdiction). In Cloutier's habeas petition to this court, paragraphs 1 and 2 unequivocally state that the judgment of conviction at issue was entered on June 4, 1991, the date that Cloutier was sentenced to death for the murder of Alice Cogler. Because the Cooney judgment of conviction is not before this court, any claims based on the Cooney guilty plea are not within this court's subject matter jurisdiction under 28 U.S.C.§ 2254(a).

## C.    Brady Claims (Claims 2 & 9)

In Claims 2 and 9, Cloutier asserts that he was denied due process, a fair trial, and a fair sentencing hearing because the prosecution withheld favorable evidence that would have corroborated his consent defense to the charge of aggravated criminal sexual assault. Cloutier claims that Brenda Grubisch informed the prosecutors that Cloutier and Alice Cogler had been acting like "a couple for the night" at the bar where they were last seen together. Cloutier argues that the prosecutors had a duty to disclose this evidence to him pursuant to *Brady* because it was material and favorable to his consent defense.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87 (1963). A *Brady* violation occurs only if the government withholds evidence that, had it been disclosed, creates a reasonable probability that the result of the entire proceeding

31

would have been different. *Strickler v. Greene,* 527 U.S. 263, 289-90 (1999). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley,* 514 U.S. 419, 434 (1995).

In addressing Cloutier's *Brady* claims, the Illinois Supreme Court rejected his arguments, stating:

> Taking petitioner's allegations that the prosecution failed to disclose Grubisch's statements as true, we find this evidence lacks the requisite materiality under *Brady* and its progeny. As explained above, the evidence of sexual assault presented at petitioner's trial was overwhelming. We do not believe that, had the testimony contained in Grubisch's affidavit been disclosed to the defense, it is reasonably probable that the outcome of either the trial or the sentencing hearing would have been different. Nor do we believe this evidence could reasonably have put the entire case in such a different light so as to undermine the petitioner's conviction of aggravated criminal sexual assault. The evidence allegedly withheld by the State is merely cumulative of that already presented at trial, namely, that petitioner and Cogler were on friendly terms and left the bar together at closing time the night of Cogler's murder.

*Cloutier III,* 191 Ill.2d at 401 (citations omitted).

This court concludes that the Illinois Supreme Court reasonably applied the materiality test as enunciated in *Kyles* to the facts at hand. *See Kyles,* 514 U.S. at 434-35. The Illinois court reasoned that Cloutier's conviction of aggravated criminal sexual assault was not undermined by the lack of the Grubisch's testimony. *See id.; see also Mahaffey,* 294 F.3d at 917 (test for materiality is whether absent the evidence, petitioner received fair trial resulting in verdict worthy of confidence). As discussed above, Grubisch, as a State witness, testified that Cogler voluntarily left with Cloutier at the bar's closing time and planned to drive him home. The additional evidence that they were "a couple for the night" is merely cumulative to Grubisch's

testimony and other evidence presented, and thus, not material.

Cloutier concedes that the Illinois Supreme Court recognized the correct legal principles, but argues that the court applied them unreasonably to the facts of his case. Without citing to Supreme Court case law or developing an argument, Cloutier contends that the Illinois court failed to consider the cumulative effect which the alleged *Brady* violations had throughout the trial and eligibility proceedings. In addition, Cloutier claims that the Illinois Supreme Court failed to consider the cumulative effects of the alleged *Strickland* and *Brady* errors combined.

Cloutier correctly notes that any alleged *Brady* evidence must be considered collectively, not item by item. *See Kyles*, 514 U.S. at 436. However, the Illinois Supreme Court concluded that there were no *Brady* errors whatsoever, therefore, there can be no cumulative effect. *Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000) (if there is no error, there are no ill effects to accumulate).

Cloutier also asserts that the Illinois Supreme Court is required to perform a cumulative error analysis as required under *Strickland*. Cloutier, however, misstates the law. Under *Strickland*, a court reviewing an ineffectiveness claim must consider the totality of the circumstances – not the accumulation of all errors. *See id.* at 695-96. Nevertheless, because the Illinois Supreme Court concluded there were no *Strickland* errors, it is impossible for there to be a cumulative effect. *Alvarez*, 225 F.3d at 825.

However, Cloutier correctly asserts that the Illinois Supreme Court failed to consider the materiality of the alleged *Brady* evidence in the context of his eligibility hearing. Accordingly, this court does not review Cloutier's claim under the AEDPA but, relies on the general standard as set forth in 28 U.S.C. § 2243. *See Braun v. Powell*, 227 F.3d 908, 917 (7th Cir. 2000). Under

33

§ 2243, the standard requires this court to "dispose of the matter as law and justice require."

At the eligibility phase of sentencing, the State presented evidence that Cloutier was found guilty by a jury for the murder and aggravated criminal sexual assault of Alice Cogler and that Cloutier plead guilty to the murder and aggravated criminal sexual assault of Cynthia Cooney. Based on this and other evidence, the jury determined that Cloutier was eligible for the death penalty for the murder of Cogler under two separate factors under the Illinois Death Penalty statute: (1) Cogler's murder occurred during the course of another felony; and (2) Cloutier had been convicted of murdering two or more individuals. *See* 720 ILCS 5/9-1(b)(3) & (6).

Because Cloutier was found death eligible based on the multiple-murder factor, as well as the felony-murder factor, this court cannot say that Grubisch's testimony at sentencing would have affected the sentencing's outcome, that is, Cloutier's death eligibility. *See Strickler,* 527 U.S. at 290 (alleged *Brady* evidence must put entire case in such a different light as to undermine confidence in the outcome). As such, Cloutier has not established that the excluded evidence was material, and thus, this *Brady* claim fails.

### D.    Prosecution's Use of Cooney Plea in Eligibility Phase (Claims 6 & 7)

In his next two claims, Cloutier asserts that he was denied his constitutional rights under the Eighth and Fourteenth Amendments because the prosecution improperly used the Cooney conviction in order to obtain his death sentence, and thus, his death sentence was an "improper double enhancement."

Cloutier's claims are procedurally defaulted because the Illinois Supreme Court denied these claims on independent and adequate state grounds. *See Stewart,* 122 S.Ct. at 2581 (if state

court decision is based on a state procedural ground that is independent of the federal question and adequate to support the judgment, federal habeas court cannot review claim). Although these claims existed at the time of his direct appeal after re-sentencing, Cloutier raised these issues for the first time in his Illinois post conviction proceedings. As such, the Illinois Supreme Court properly concluded that each of these claims was waived because they could have been raised previously, but were not. *See Cloutier III,* 191 Ill.2d at 406-07. The Illinois Supreme Court's conclusion that Cloutier's claims were waived is a decision based on independent and adequate state grounds, *see Aliwoli,* 127 F.3d at 634, and thus, the claims are procedurally defaulted.

This court, however, can reach the merits of Cloutier's procedurally defaulted claims if he establishes cause and prejudice or that a fundamental miscarriage of justice occurred. *See Coleman,* 501 U.S. at 750. However, Cloutier does not argue cause, prejudice, or that "some objective factor external to the defense" obstructed his ability to raise these claims nor does he claim actual innocence. *See Sawyer v. Whitley,* 505 U.S. 333, 339 (1993) (miscarriage of justice exception applies to "actual" innocence as compared to "legal" innocence). Accordingly, this court cannot consider Cloutier's defaulted claims.

### E.     Hearsay Evidence at Sentencing (Claim 10)

Cloutier's next claim is that he was denied the right to confront witnesses and to a fair capital sentencing hearing in violation of the Fifth, Sixth, and Fourteenth Amendments when the court allowed Detective Drish to testify at the eligibility phase of his sentencing about statements made to him by victims Halili and Bradford. Cloutier claims that the jury may have considered this inadmissible hearsay evidence in determining that Cloutier murdered Cogler during the

35

commission of an aggravated criminal sexual assault making him eligible for the death penalty.

It is true that the Illinois Supreme Court concluded that Detective Drish's testimony regarding the out-of-court statements by Bradford and Halili was inadmissible hearsay. *See Cloutier II,* 178 Ill.2d at 155-56. The court concluded, however, that the error in admitting this testimony did not require reversal of Cloutier's death sentence because the jury made a separate eligibility finding under the multiple-murder factor. Specifically, the court stated:

> [B]ased on careful review of the record we conclude that the improperly admitted hearsay could have had no effect on jury's separate verdict on the multiple-murder aggravating factor set forth in section 9-1(b)(3).... In the present case, overwhelming evidence was presented establishing defendant's eligibility for the death penalty under the multiple-murder factor. The State introduced certified copies of defendant's convictions of the murders of Alice Cogler and Cynthia Cooney, and defendant's own statements detailing the deliberate manner in which he killed the two women establish that he acted with the requisite mental state under section 9-1(b)(3).

*Id.* at 156-57 (citations omitted).

The Illinois Supreme Court's decision was not an unreasonable application of clearly established Supreme Court precedent. First, the Illinois Supreme Court relied upon state law in determining whether the hearsay admitted had an effect on the jury's separate verdict under the multiple-murder factor. It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Second, although the Illinois Supreme Court did not cite to Supreme Court case law, its decision was a reasonable application of federal law based on clearly established Supreme Court precedent. *See Early,* 123 S.Ct. at 365 (state courts not required to cite United States Supreme

Court cases or even be aware of such cases, as long as neither the reasoning nor result of the state court decision contradicts them). When evaluating Cloutier's death eligibility, despite its finding that part of Detective Drish's testimony was inadmissable hearsay, the court concluded:

> Once one statutory aggravating factor has been found, the defendant is eligible for the death penalty, regardless of whether other factors have been proved as well. Thus, where a defendant is found eligible for the death penalty based upon two or more statutory aggravating factors, the fact that one of those factors may later be invalidated will not generally impair the eligibility finding as long as a separate, valid aggravating factor supported eligibility. In the case at bar, the jury's verdict on the multiple-murder factor independently established defendant's eligibility for the death penalty regardless of the validity of the verdict on the felony-murder factor.

*Cloutier II,* 178 Ill.2d at 157 (citations omitted).

The Illinois Supreme Court's conclusion is in accordance with *Stringer v. Black,* 503 U.S. 222, 232 (1992), in which the United States Supreme Court held that if the sentencing body finds at least one valid eligibility factor, the fact that it finds another factor invalid does not make the death penalty inappropriate, as long as the invalid factor would not have made a difference to the jury's determination. *See also Coleman v. Ryan,* 196 F.3d 793, 796 (7th Cir. 1999) (when "defendant's eligibility for the death penalty is based on two independent factors, a finding that one factor satisfies constitutional mandates can be sufficient under appropriate circumstances for us to uphold the imposition of the death penalty.").

Because the Illinois Supreme Court properly concluded that Cloutier was death eligible based on the multiple-murder factor and that the hearsay testimony had no effect on the jury's verdict, the Illinois Supreme Court reasonably applied Supreme Court precedent to Cloutier's claim.

**F.      Victim Impact Evidence/Improper Argument  (Claims 14 and 15)**

In Claim 14, Cloutier asserts that the prosecution's use of victim impact evidence and improper argument at the sentencing hearing violated his right to fair capital sentencing under the Eighth and Fourteenth Amendments.  This court, however, cannot reach the merits of these claims because they are procedurally defaulted.

In Cloutier's post conviction appeal, the Illinois Supreme Court rejected Cloutier's claim regarding the victim impact evidence based on state waiver grounds because this claim could have been raised earlier in the proceedings, but was not.  Because the Illinois Supreme Court concluded that Cloutier's claim was waived, the court's decision was based on independent and adequate state grounds that this court must respect.  *See Wright v. Walls*, 288 F.3d 937, 947 (7th Cir. 2002).  Because Cloutier has made no arguments concerning cause, prejudice, or a miscarriage of justice, this court is barred from reviewing the merits of this claim.

In Claim 15, Cloutier argues that because the prosecutor asked the jury to consider the wishes of the Cogler and Cooney families regarding the imposition of the death sentence, he was denied a fair capital sentencing.[3]  During closing arguments, Cloutier's counsel argued that natural life would be an appropriately severe punishment for Cloutier.  In rebuttal, the prosecution stated: "Would the friends and family of Alice Cogler and Cynthia Cooney gladly ask that he suffer that terrible punishment rather than the one he gave them? What do you think?"

---

[3]   Cloutier asserts other instances of alleged improper argument in his habeas petition, but fails to make any argument in support of these claims.  Because he does not cite Supreme Court precedent or explain why the Illinois courts' decisions were contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, this court cannot grant habeas relief on these unsubstantiated claims.  *See Hindi v. Warden of McHenry County Jail*, 82 F.Supp.2d 879, 885 n.4 (N.D. Ill. 2000).

*Cloutier II*, 178 Ill.2d at 171. Without deciding whether the prosecutor's statements were proper or not, the Illinois Supreme Court concluded that the prosecution's argument was "not so inflammatory as to constitute reversible error." *Id.* at 171-72.

This court concludes that the Illinois Supreme Court's conclusion is not contrary to or an unreasonable application of clearly established Supreme Court law. Where prosecutorial misconduct is found to be harmless, habeas relief cannot be granted. *See, e.g., Brecht v. Abrahamson*, 944 F.2d 1363 (7th Cir. 1991). The Seventh Circuit has yet to decide which harmless error standard applies post-AEDPA – *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (whether the error had a substantial and injurious effect or influence on the jury's determination) or *Chapman v. California*, 386 U.S. 18, 24 (1967) (the error did not contribute to the verdict "beyond a reasonable doubt"). Nonetheless, under either standard the Illinois Supreme Court's conclusion that the prosecutor's comments during closing argument were harmless error was an appropriate application of Supreme Court precedent, especially in light of the overwhelming evidence regarding Cloutier's eligibility for the death penalty and the aggravating factors supporting his death sentence. *See Rodriguez v. Peters*, 63 F.3d 546, 558 (7th Cir. 1995) (overwhelming evidence supporting guilt eliminates any doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations).

Additionally, Cloutier argues that the cumulative effect of the prosecution's improper argument regarding victim impact evidence denied him due process. Cloutier admits that he did not raise this claim before the Illinois Supreme Court in his criminal appeal. In his post conviction appeal, Cloutier argued to the Illinois Supreme Court that even though his claim was waived, the court should relax the waiver rule in the interests of fundamental fairness. The

Illinois Supreme Court rejected this argument and concluded that the claim was waived. *Cloutier III*, 191 Ill.2d at 407.

As this court has previously articulated, because the Illinois Supreme Court concluded that this claim was waived, the Illinois court's holding constitutes an independent and adequate state ground. *See Aliwoli,* 127 F.3d at 634. When a state court does not address a federal claim because the petitioner failed to meet independent and adequate state procedural requirements, this court is barred from reviewing the claim. *See Stewart,* 122 S.Ct. at 2581.

### H. Post Conviction Proceedings in the Illinois State Courts (Claims 16 & 17)

In Claim 16, Cloutier contends that he was denied due process under the Fourteenth Amendment because the Circuit Court summarily denied his post conviction petition without conducting an evidentiary hearing. In Claim 17, Cloutier argues that the Illinois Supreme Court violated his Fourteenth Amendment rights to due process and equal protection on his post conviction appeal because it invoked a novel procedural bar, and thus, did not consider his ineffective assistance of counsel claim in connection with his plea in the Cooney case.

Federal habeas relief is only available for persons who are contesting the fact or duration of their custody arising from their state criminal convictions. *See* 28 U.S.C. § 2254(a); *Moran v. Sondalle*, 218 F.3d 648, 650-51 (7th Cir. 2000). It is well-established that state post conviction proceedings are civil in nature, not criminal. *See Pennsylvania v. Finley,* 481 U.S. 551, 556-57 (1987). Therefore, § 2254 does not afford any relief for errors arising out of state post conviction proceedings unless the state collateral review procedure violates an independent constitutional right. *See Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996).

Cloutier's claims arising from his state post conviction proceedings do not challenge his

direct criminal conviction and custody. Instead, they attack the state proceedings that are
collateral to his custody. Cloutier does not make an argument in support of an independent due
process violation in support of either Claim 16 or 17. Therefore, his challenges to the state post
conviction proceedings cannot provide a basis for the grant of federal habeas corpus relief. *See
Zamora v. Pierson*, 158 F.Supp.2d 830, 835 (N.D. Ill. 2001) (alleged errors in the state post
conviction proceedings do not raise constitutional questions cognizable in habeas corpus
proceedings). Therefore, Cloutier's claims challenging his Illinois post conviction proceedings
are denied.

I.     **Illinois Pattern Jury Instructions (Claim 18)**

Without any legal argument, Cloutier's last habeas claim is that the Illinois Pattern Jury
Instructions used in the penalty phase of his trial are unconstitutionally vague and confusing,
resulting in the likelihood that the death penalty was arbitrarily and erroneously imposed.
Cloutier's claim fails for two reasons.

First, this claim is procedurally defaulted because the Illinois Supreme Court rejected this
argument based on independent and adequate state waiver grounds. *See Cloutier III*, 191 Ill.2d at
407 (Illinois Pattern Jury Instruction argument waived because it could have been previously
raised, but was not). Cloutier does not argue that cause, prejudice, or a fundamental miscarriage
of justice prevented him from complying with Illinois' procedural rule.

Second, the United States Supreme Court has yet to consider whether the Illinois Death
Penalty Statute and accompanying pattern jury instructions are unconstitutional. Because there is
no Supreme Court precedent, Cloutier's claim cannot be the basis for a finding that the Illinois
Supreme Court's decision "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1); *Young v. Walls*, 311 F.3d 846, 849 (7th Cir. 2002).

## J.    Evidentiary Hearing

Finally, Cloutier requests an evidentiary hearing under § 2254(e)(2) to develop the factual record concerning his ineffective assistance of counsel and *Brady* claims. In general, this court's ability to hold an evidentiary hearing so the petitioner may supplement an underdeveloped state court record is "severely circumscribed." *Boyko v. Parke*, 259 F.3d 781, 789-90 (7th Cir. 2001); *see also Williams*, 529 U.S. at 437 (federal habeas courts are not alternative forum for trying facts and issues that petitioner did not pursue in state court). Section 2254(e)(2) provides that, if a factual basis of a claim was not developed in the state court, the federal habeas court "shall not hold an evidentiary hearing" unless the petitioner can show:

(A) the claim relies on --

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Because Cloutier does not assert that a new rule of constitutional law is implicated, he must demonstrate that the failure to develop a factual record in the state court was not his fault. *See Williams*, 529 U.S. at 432. Also, Cloutier must point to facts sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would find

him guilty of the underlying offense. *See* 28 U.S.C. § 2254(e)(2)(B). Because Cloutier has failed to argue any facts that satisfy this strict standard, an evidentiary hearing is unwarranted.

## VI. CONCLUSION

For the above reasons, Cloutier's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [12-1] is denied and this case is dismissed with prejudice. This is a final judgment and the clerk of the court is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

**ENTER:**

*Blanche M. Manning*

**Blanche M. Manning**
**United States District Court Judge**

**DATE:** JAN 0 7 2003